Okay, I think we're we're set to hear the case of Davis versus Samuels first If I'm right about that, I'll go ahead and ask counsel for the appellants to introduce  Proceed Thank you, Your Honor. This is Stephen Sogden. I'll counsel for Brian Davis and Frederica Thetford I'd like to reserve two minutes for rebuttal, Your Honor How many minutes? Two minutes. Done. Thanks All right. Thanks so much and may it please the court. Your Honors, given the number of issues In the case, I confess I have struggled with the best place to start But I do think the best place is the foundational issue of the status of the Geo defendants as government actors There's no question that incarcerating people is within the exclusive prerogative of a government. An entrepreneur cannot choose to go into the business of incarceration. It can only do so if it's given those powers delegated to it from a government and that's what has occurred here The message, one of the clearest messages in the Supreme Court's government actor jurisprudence Is that a government cannot nullify constitutional obligations through delegation Okay, hold on. Let's assume we agreed with you on that, okay? Okay, and let's let's turn to the question about Questions about your Bivens claim. How do we square what you're asking us to do with the very recent Decision from the Supreme Court and Hernandez v. Mesa, which which seems to say pretty emphatically, hey you folks don't don't get in the business of Extending Bivens to new areas, and I think you'd agree, would you not, that this would be an extension? Your Honor, we agree with that. I mean we certainly agree that this is an extension and therefore Special factors analysis that the court has mandated whenever an extension of Bivens is requested that does apply So you're right and and the Supreme Court has obviously expressed great resistance to extensions to Bivens. Hernandez v. Mesa is obviously a very different type of case. That case squarely raises the separation of powers issues that drive the special factors analysis. In that case you have a cross-border shooting, which leads to, led to an international incident, a dispute between Mexico and the United States, and and obviously that type of dispute is within the exclusive prerogative of the executive and and so the separates the powers issues that drive the special factors analysis were obviously acute in that case. Well, aren't they pretty acute in the context of dealing with prisons and running prisons and particularly when you got the Prison Litigation Reform Act staring in the face as a judge. It looks like Congress has thought about and pretty carefully thought about the remedies it wants to give to prisoners and and Bivens isn't one of them. Well that the And that's a fair question, Your Honor. That's a fair question. I do think that in Carlson v. Green, obviously Bivens, a remedy under Bivens was was established there and and certainly the court there suggested that prison officials are not so independent as to make judicial intervention or review of their conduct inappropriate. If separation of powers issues had been the dominant concern, I don't think Carlson could have come out the way it came out. Here the only different factor is that there's a private prison as opposed to a prison operated directly by the federal government, but the private status of the company operating Mochana Valley doesn't itself create separation of powers issues and and and if just one further thought on this, Your Honor, the separation of powers issues in this setting really really did warrant a refusal to allow a Bivens remedy. They warrant a refusal to allow any sort of judicial intervention. So you wouldn't have injunctive relief or declaratory relief, but there's no question that declaratory relief and injunctive relief are available. The issue in Bivens is simply that a damages remedy isn't available. So for all those reasons, the separation of powers issues in this setting just don't have the same level of acuteness that they have, for example, in a case like Hernandez v. Mason. I apologize if I talked over one of the panel members there. Mr. Fogel, this is Judge Restrepo. How are you, sir? Yes, Judge. How are you, Your Honor? Great. Thanks. Turning to your 1985 claim, could you tell me where in the complaint you've pled enough, so to speak, to suggest that these decisions were based or rooted in discriminatory animus as opposed to legitimate considerations that folks running prisons have to take into consideration? Well, starting with the premise that the BOP uses private facilities like Moshannon Valley to house alien inmates. Alien inmates aren't housed in prisons operated by the federal government. They're housed in private prisons. The allegation in the complaint is that there was a meeting of the minds between the private company, the Geo Group, and the Department of Human Services to find reasons not to approve the request by alien inmates to marry citizens of the United States, and there was a meeting of the minds to do that in order to further the desire of the Department of Homeland Security not to make potential relief available to these alien inmates. That's the allegation in the complaint. So it was discrimination based on national origin? Nationality? I read, Your Honor, I read the complaint as alleging discrimination based on alien status, which is not quite the same thing as national origin, but that's what I, that's how I read the complaint, that the operative discrimination is discrimination on the basis of alienage. Yeah, but isn't it true that lots of things can be negative from the point of view of an alien without violating the law? I mean, it's not unusual. For example, an alien won't have the right to vote, which is a fundamental right. Your Honor, that is correct, but in this case, what is alleged is that, is that a marriage between a United States citizen Ms. Backford and an alien, Mr. Davis, is being prohibited on grounds that do not pass constitutional muster. And so, number one, the rights of a United States citizen to marry, which is a fundamental constitutional right, are being violated. And they're being violated, the allegation is, because certain individuals do not want United States citizens marrying alien inmates. So, it's not simply, it's not simply that an alien is being given the right to vote, which would just affect that alien. This is a situation where a United States citizen is not being permitted to marry an alien. Well, Counsel, what's your position with respect to your RFRA claim, the Religious Freedom Restoration Act? Did you, did you pursue that in the district court, or was this pursued in the district court? Your Honor, is this Judge Restrepo? Yes, correct. Thanks. Okay. All right. Thank you, Judge. So, the, the, that complaint, that claim is not specifically alleged in the amended complaint. The plaintiffs below, when they were pro se, did allege a violation of a neighboring statute within Title 42, but fairly read, the complaint, I believe, does at least hint at a discrimination pursuant to Religious Freedom Restoration Act, or RFRA, that certainly, you know, this Court has emphasized that in civil rights cases, particularly civil rights cases brought by pro se plaintiffs, they should be given every opportunity to amend, if it's possible to amend, to state a viable claim. And I do believe that the RFRA claim is a viable claim, and, and, and, and it would be appropriate under this Court's jurisprudence to grant the plaintiff's leave to assert that claim. It arises out of the same operative facts as what's alleged, and, and, and, and it is a viable claim in, in my view. It is not, to answer your question directly, Your Honor, it was not explicitly pleaded in the complaint below. Yeah. Well, if, if that's the case, how, how can we, how can we deal with it? Well, Your Honor, I, I, in, in two ways. Number one, the Court in, in appointing counsel and appointing myself did ask to, for an evaluation of alternative remedies, and, and I do believe it is RFRA does exist as an alternative remedy for these plaintiffs. So, so it, it, it is relevant to the Court's analysis, number one, in that respect. But, I mean, the Court does have the power, if there is a viable claim here, and given the Court's emphasis that pro se plaintiffs in civil rights cases should be given every opportunity to amend, I do believe it is in the Court's power to remand the case to give the plaintiffs an opportunity to amend the complaint to assert that claim. So I don't, the fact that it wasn't specifically pleaded does not, it's not a jurisdictional defect. It doesn't, it doesn't preclude this Court from, you know, remanding with instructions to the District Court to allow that claim, to allow an amendment to assert that claim. Does that answer your question, Your Honor? Yeah, yeah, it does. Can, can I ask you, just about the service issue here, Yeah. How is it that the District Court abused its discretion in dismissing the federal defendants when it appears that even up to today they've not been properly served? And, and correct me if I'm wrong about that. If they've, if there's an indication in the record that they've been properly served at this point, I missed it. Your Honor, there, there weren't efforts to, to serve the, the defend, the, the agency defendants after the complaint was dismissed. And, and I, and I would concede, Your Honor, that service was not properly affected in the District Court. That I agree with. They did not complete service. The error that the District Court committed was not in concluding that service had not been completed. The error that the District Court committed was in not even considering whether relief under Rule 4-M should be granted. In this particular case, the plaintiffs had no idea that they had not complied with Rule 4-I completely. How could they not know that? I mean, the Court had several interactions with them, did it not? Well, it, not after, not after the, the, the, the, in July of 2018, they were instructed to serve the defendants, and they did that, and they filed, they believed that they had done it correctly. They filed a notice of compliance in the District Court, and shortly thereafter, the GEO defendants appeared and did not challenge service. The, the agency defendants did not appear. So, so the only, the only party, the only defendants that appeared did not challenge service. And there was no indication at that point that service had not been completed. Well, doesn't, doesn't that kind of, doesn't that kind of make the point? If the people who didn't get served didn't show up, isn't that a pretty good indicator that something's awry? Well, it, it, it, it, it, it, it, it may suggest that, your Honor. I mean, I, I have to concede that, that's an inference to be drawn there, but, but what occurred here was a couple of months later, the, the agency defendants did appear, uh, sent a letter to Mr. Davis and Ms. Beckford explaining that, that Rule 4i had not been complied with. At that point, the, the, the appellants asked the court to issue new summonses, which it did, and they then attempted to serve those summonses in accordance with Rule 4i and the letter that they received from, from the United States Attorney. And, right, and there's no question that Rule, I'm sorry. They still didn't, and still didn't get it right. I'm, right? They did not. They did not. I agree with you, your Honor. Right. So now we're struggling with the question of whether there's an abuse of discretion in a court saying, look, it's been explained to you how to do this and you're, you're still not doing it. So. Well, and I, and I apologize, your, your Honor. The telephone is, is, uh, I think it's leading me to, to cut you off and I, and I apologize for that. Um, is it okay if I go ahead and answer the question, your Honor? Yeah, you bet. Okay. Okay. So, so, you know, as I read it, and Rule 4i is, is probably the most complicated part of Rule 4, um, but as I read the provisions in Rule 4i, they did complete service, at least as to the BOP administrator and probably David O'Neill, as to claims in their official capacity. Where they fell short was in, was in asserting claims, is, was in service with respect to individual capacity. I do believe that they fell short in that respect. But, but the next question is, do they deserve some time to try to correct that? And, and, and that was never, that the district never considered that issue and, and, and should have. I mean, so the abuse of discretion was in not, in not considering Rule 4m and particularly when the government had appeared and said that as to the BOP administrator, a response was due by a particular date. Oh, okay. Well, thanks very much, uh, Judge Restrepo or, or Judge Greenberg. Do either of you have further questions? No, your Honor. No, I don't. No. Oh, all right. Well, uh, you've reserved time for, uh, rebuttal, sir. We'll have you back. Um, for that. I, if my timing, you know, we don't have the advantage of the official clock, but by my count, uh, you're, uh, we've gone a little past that 13-minute mark, uh, and you've reserved two minutes for rebuttal. Um, I guess, uh, next up we've got, um, Mr. Specks for, uh, uh, for, uh, George Wiggin and the Geo Group. Am I correct? Yes, your Honor. Um, may it please the Court, my name is Tom Speck. I'm from Marshall-Dennehy and I represent Mr. Wiggin and the Geo Group, Inc. Excuse me. Eight, eight minutes for, uh, you on this? Is that what got you set? Yes. I've agreed with, uh, Ms. Arwin that divided up to, uh, eight minutes for me and seven minutes for her. Okay, go ahead. Um, your Honor, um, I just wanted to address some of the questions that were raised by the Court and when you were talking to Mr. Fogdahl. Um, the first question regarding whether or not, uh, the Geo defendants are government actors. I would just like to, uh, point the Court to the case of Richardson versus McKnight. Um, and before that, uh, just to discuss when, when talking about whether or not a party is a federal actor, um, we're talking about the public function test, um, set forth by this Court in Brown and the language of, of, of Brown talks. Excuse me. Let's cut right to it. What, how can the operation of a prison not be a public function? How, how is it that that's not like as square in the middle of public function as you can get? Um, well, public function test talks about it being the exclusive, traditionally the exclusive prerogative of the government. And although prisons obviously are operated by the government, um, operation of prisons has not traditionally been the exclusive prerogative of the government. Um, and that's where, and that's where we get through the case of Richardson-McKnight from the Supreme Court, where they talk about the fact in, in, in deciding whether or not guards were entitled to qualified immunity in that case, the Court explicitly stated that correctional functions have never been exclusively public. And that's at page 405 of that case, 521 U.S. 405. Also it, in the Hawley case, which is also cited in our brief, the Fourth Circuit talked about how jails and prisons existed in the United States in the 18th and 19th centuries when they were operated privately at that time. So this is, Let me, let me, let me interrupt you because, uh, it could be that my colleagues have more questions for you in this regard, but we've got a limited amount of time with you. Sure, sure. And I'm just, you know, candidly, uh, uh, I'm not buying it. They might, but I, I don't remember, you know, since time immemorial, people saying, Hey, let's go down the street. We might find a better, you know, I think Bob's is running a better prison than Chick-fil-A here. I mean, it's not a private business. It's a government function traditionally. So talk to me instead about, um, the, the section 1985, the conspiracy claim, and in particular the magistrate judge's, uh, focusing her decision on, uh, purely private, uh, conspiracies. Is that a, is that, was that an appropriate foundation for that decision? Well, your Honor, it, it all depends on whether or not you would accept, uh, whether or not the GEO descendants are, are federal actors. Um, and, and if you, if you buy the, the allegations of the complaint, Well, let's assume we do, let's assume we do, with the GEO policy. I'm sorry. Let's assume we do accept the fact that they are government federal actors. Take it from there. Well, if the complaint talks about this policy being a GEO policy, um, it, it talks about that it even contradicts, you know, uh, uh, Bureau of Prisons policies. So if, if it's solely between the, the GEO, um, persons, then it, then arguably it would be private. Um, but, um, to, to me the, the, the greater issue, and this, and this court can affirm on any basis, is the fact that, um, there, there isn't an underlying conspiracy that's been sufficiently alleged here. There's been just totally conclusory allegations of conspiracy. There's been, you know, no persons identified who agreed to the conspiracy, the specific communications or manner in which it was made, and, and that violates the pleading requirements set forth by Third Circuit and the United States Supreme Court case law. Also, Well, they do, they do, don't they plead that GEO included restrictions that were more onerous, um, in, in collusion, as it were, with the federal government to keep foreign nationals from marrying U.S. citizens? In, in a very conclusory fashion, Your Honor, Your Honor, and that's why we argue that these were insufficient allegations of, of conspiracy. Um, you know, however, there's also, We're dealing with a pro se pleading here, right? I mean, that's got to matter for something, doesn't it? It does matter for something pursuant to this court's law. However, um, even, even a pro se plaintiff has to sufficiently plead matters. Um, and you, you know, in, in this case, you know, as we've set forth in our brief, Well, answer, answer this. They, it appears that they have, they've said, uh, if I read the complaint right, um, that, uh, you folks, you folks, meaning your clients, and the, and the federal defendants, uh, agreed to prevent, uh, people from, uh, uh, marrying, and you did it because on the federal side, uh, they didn't want to complicate their, uh, immigration removal proceedings. And on your side, you had a, you had a monetary motive, because the more people in your prison, the more money you made, uh, and that it was there, it was based on alienage, because that, you know, that's the whole point of the immigration piece. Um, and that, um, you know, you, you took acts to further that. You prevented them from exercising a fundamental right, and you did it for these, uh, unconstitutional reasons, and they were hurt by it. Now, now that's, you know, maybe I've, I don't think I've overread it. I think that's, if I get the nature of it, what is it about that that does not state a claim? Um, well, your honor, alien status, national, national, national origin status isn't a proper class under, uh, 1985-3. Um, you know, there has to be, um, immutable characteristics that, that undergird that class. And also, National origin, national origin isn't a class? Well, in, in this case, it's not, because they're, they have to, they have to not only show that of national origin, but they have to show that there's been historically pervasive discrimination against their, their national origin, which in this case, I believe, is, is Jamaican. And they haven't shown that in their complaint. They haven't pleaded that in their complaint. Um, but there, what's your basis for that? What's the basis for saying that the national origin, that, that the way they've pleaded is outside our, uh, our law? Um, that would be, um, there, there are numerous cases talking about, uh, that it has to be historically pervasive discrimination. I believe, uh, I've cited them in our brief, 457 U.S. 223, um, 239, F3, 317, that's from the Third Circuit. So wait, is it, is it your position that they would have, not only they have to plead that, I wasn't permitted to marry because I'm a Jamaican national, but there's a history of discrimination against Jamaican nationals who want to marry U.S. citizens that have to take it that far? Yes, it would have to be historically pervasive discrimination. Really? And that would have to be pledged? Yes, I believe so, Your Honor. That, that's what the, the cases talk about, that it has, that just to be a permissible class, there has to be a history of pervasive discrimination, um, under 1985. Um, uh, and, and, you know, with also, with regard to Mr. Davis, he's also pled in his complaint that his class status was, he, his class, the fact that he was a Jamaican, um, had, had no effect on whether or not he would be deported because of the serious natures of his crimes. Therefore, you know, any, any membership in any class, it didn't motivate the action against him. Um, well, we're talking, that might be a summary judgment argument, right? But how is that an argument at the pleading stage? Well, he, he, Your Honor, he, he pleads that himself in, in his complaint. Um, you know, so that, that's why we rely on it. Um, I know I only have a very little time here, Your Honor, but I, I just wanted to touch briefly on the, the RFRA claim too. Um, this, this, this court was correct that, you know, that claim wasn't raised below. And, you know, we argue that it can't be raised on appeal pursuant to third circuit law, such as 709 S. 3rd 240. Um, and that, and that, and, and, you know, we, we would agree that this court can't, can't address that at this time. All right. Thanks, Mr. Speck. Um, unless my colleagues have a further question for you, we'll turn to Ms. Irwin. Thank you. Are there any questions? Thank you. This is Laura Irwin on behalf of the U.S. Attorney's Office and Federal Appellees calling in from Pittsburgh. Your Honors, many of the issues in this appeal as it presently stands turn on, are we all there? I hope we didn't just lose somebody. Let me just do a quick roll call. Mr. Fogdoll? Yes, Your Honor. Mr. Speck? Yes, Your Honor. And Ms. Irwin? Yes. Okay. Judge Greenberg? That's a bad sign. Maybe he's washing his hands again. Yeah. Judge Restrepo, are you still with us? I'm with you. Um, okay. We're just gonna like go on hold here, pause here for a minute, and um, um, uh, Mr. Cain, you still there? No, Judge. Um, it's Erica. I'm here. Um, I will call Greg and see if he can call Marianne and have her call Patch, Patch Judge Greenberg back in. That'd be great. Thanks so much. And then let us know where we stand. Sure. Yeah, Judge Greenberg fell off the call. Can you call Marianne? Thank you. Judge Jordan, Greg's calling Marianne right now. Okay. Thanks. You're welcome. Okay. What's happening right now? I have no idea. You mean that the lawyers are dropping off too? Telephone connections or the the internet or what's the connections? I thought he was calling us from his home number from the landline. Okay. We're hearing everything you're saying, Judge Restrepo, just so you know. I got it. Thanks. Okay. I will transfer Judge Greenberg into the call. Hold on, please. Thanks. All right, you there? Not yet. I'm trying. Hold on, please. Oh Judge Greenberg's on the line. Judge Greenberg, you there? Yeah, I got cut off all of a sudden and went dead. Okay. Well, you're back and uh... I went dead after only about one minute of argument by Ms. Irwin. Right, right. So we heard you beep off and we stopped right away. Oh, fine, but I didn't miss anything. I don't know why I went dead. No, but we're ready to go here. Okay. I will just for verification, once again, make sure we're all around here. Mr. Fogdale, you there? Yes, your honor. Mr. Speck? Yes, your honor. Okay, Ms. Irwin, if you're there, please continue. Thank you, your honor. Again, this is Laura Irwin from the U.S. Attorney's Office on behalf of the federal appellees. Many of the issues in this appeal turn on Bivens liability and Bivens liability is a question of whether the court's going to imply a cause of action to hold individual government employees personally liable for money damages. And it's important to recognize that that is exactly what it says. It's personal and individual. There's no vicarious liability. There's no superior liability. Okay, we've got some crosstalk going in the background. I'm not sure what that's about, but go ahead, Ms. Irwin. Thank you, your honor. It's important to remember that in those three Supreme Court cases where they have implied Bivens liability, there was a wrong that could not be undone. It was backward-looking relief. For example, in Bivens, it was a Fourth Amendment violation, Carson was a wrongful death, and Davis was a wrongful termination. It's important to remember that. Oh my God, the phone's ringing. I'm not answering. Somebody's phone's ringing. Yeah. I don't know where we're picking that up, but you should proceed, Ms. Irwin. But let me interrupt you, as long as we're interrupted already, and say, let's assume for the sake, just for a moment here, for the sake of discussion, we agreed with you that this was a new area and that special factors counseled against extending Bivens liability, but why, first looking at the service of process issue, why wouldn't it be an abuse of discretion to hold people into this case who clearly were on notice, knew what was going on, they'd received the information they needed to, and the court could have given a break under 4M. Why should they not be held to account? In other words, why should we be doing this on a close reading of Rule 4 and not on the merits? Two answers to that question, Your Honor. First is, it's our position that service was not perfected. Service functions for two reasons, notice and jurisdiction, personal jurisdiction. Take that as given. That's not speaking to the point. We accept, for the purposes of this discussion, that service was not perfected. The question isn't whether the rule was followed to the letter, but whether people were on notice and could properly be held to account because they knew what was going on and they actually showed up and made arguments. Okay. I misunderstood. I apologize. I misunderstood your question. Our position is that it would be appropriate for the court to remand the case. In fact, we moved to remand back when the appeal was first noticed and that motion was denied because we wanted the opportunity to investigate service, to investigate the allegations, to investigate exhaustion. And that motion was denied, so we've gone forward with the briefing. But our position consistently has been, and this is contrary to some of the allegations in the pro se reply brief filed in the first round of briefing, where there's some suggestion that the federal athletes were engaged in some level of gamesmanship. We've repeatedly tried to get this case to a level where their claims can be at least vented on 12b motions. We did that with our motion to extend time, which I recognize that opposing counsel believes that that amounts to an entry of appearance, but once the U.S. Attorney's Office was provided with a copy or served with a copy of the complaint, by Rule 12b-3, we had 60 days to respond. That was the function of that motion. We did not enter an appearance. And then later, once the case was dismissed, we moved to reopen the case because we felt that there was some question of whether or not service had been accomplished or possibly not accomplished. But again, we wanted to investigate. So even though there is a history of this case going on for a very long time, it would not be a problem. Not just going on for a very long time. The federal government's positions have been put on the record, right? I mean, would you have said anything different in this case that hasn't been said on the merits if instead of certified mail or FedEx you'd gotten this delivered to you by the United States Postal Service? Actually, I didn't mean to interrupt, Your Honor. Actually, it could be different because one of the important omissions in this case is the constant referencing of the BOP administrator. We don't know who that is. And the plaintiffs are thinking, under Bivens, individual liability. We don't know who that person is. So we don't know whether they, you know, we have other arguments on their behalf. You don't know who runs the prison? You don't know who runs the Bureau of Prisons of the United States? No, no. I'm sorry. They're talking about the private management manager. I'm forgetting the name that they give him, but they call him BOP administrator is my short term for their private management branch manager. That's not the director of the Bureau of Prisons. So that you're saying you're advancing something on behalf of the GEO group or you're saying, no, he's trying to get at somebody in the federal system who he has and who they have not identified. It's the latter, Your Honor. And actually, what's so confusing about this is that the plaintiffs allege in their complaint at paragraphs 35 and 69 that they received written correspondence from this individual. Yet, they don't have his name and unfortunately, these positions change from time, you know, very frequently within BOP who's running what and the same thing goes for DHS. We don't know what specific time frame they're talking about because their allegations start in 2012. Okay. Well, I got you on that point. Can you say whether or not you're still holding the position that section 1985 does not apply to federal actors? Well, Your Honor, I think it's an open question and whether there are how many cases from all over the country, from the D.C. Circuit, the Ninth Circuit, the Tenth Circuit, from the Second Circuit, all saying hey, 1985 reaches federal actors. What is it that, what's still, why is it still an open question in your mind? Because this circuit has not ruled on that. So it's a very straightforward position. But even putting that aside, Your Honor, we don't believe that they've stated a claim under 1985 and we realize there's a fine intersection between the leniency given to pro bono plaintiffs and the specificity requirements that are pretty stringent for a 1985 claim. But the specificity we're looking for is who are the people you're talking about? When did this happen? What conversation are you talking about? That's what we're looking for that's lacking in this complaint. Even with regard to the GEO group, and obviously they have their own counsel, but they keep saying the GEO group- Are you suggesting, Ms. Irwin, that there's a sort of a Rule 9b level of specificity required to state a conspiracy claim? I think that there is for 1985-3. What's your, what's your story for that? There's briefs, the cases cited in our briefs, it requires specificity, but I off the top of my head don't know if they cite Rule 9. Yeah. I'd be happy to look into it and submit a 28-J if you'd like. Any other questions from Judge Restrepo or Judge Greenberg? None for me. Okay. Thanks, Ms. Irwin. Mr. Fogdahl, we'll give you your two minutes on rebuttal here. Thank you very much, Your Honor. Let me start with the arguments from the government, from the agency defendants. The BOP administrator is the official within the Bureau of Presence that administers the Privatization Management Branch, according to online information about the Bureau of Presence, there is a Privatization Management Branch that oversees the operation of Contract Presence, and that branch has an administrator, and that is the individual that plaintiffs were intending to sue. I have not, through my own investigation, been able to uncover that individual's name, but it's clear that there is an office holder who is the administrator of the BOP's Privatization Management Branch. Counsel referenced some materials that are not in the record. When the plaintiffs, when Mr. Davis grieved the denial of his marriage request, he appealed the denial of the grievance to the BOP and received a response from the BOP administrator's office that he could not grieve this issue with the BOP. He could only grieve it with his private, with the institution, and that correspondence did come from the administrator's office, but it does not contain, and I realize I'm representing, to your honors, something that's outside the record, but I do have that correspondence, and it does not reference the individual's name. Okay. So, so I just, I wanted to express that. On, I'm going to give you your, your, I'm sorry, we're short on time here. I'll give you another 30 seconds. Okay, I appreciate it. Just on the issue of alien status, the Supreme Court in Graham v. Richardson said, aliens are a class of, are, as a class, are a prime example of a discreet and insular minority for whom heightened judicial solicitude is appropriate. So, aliens are, is there any, is there any law that requires the, that there be a specific history with respect to a specific national origin? You heard Mr. Speck's assertion that there would have to be a history of discrimination against Jamaicans in particular, and indeed with respect to marriage. I have, I am aware of no authority for that assertion. All right. All right. Well, counsel, thank you again for making yourself available by phone today. You know, this is not the ideal way to, to handle this, but I think we've had a fair opportunity to, to air the issues that were, that were well briefed, and we'll, we'll take the matter under advisement. We'll ask counsel on this conference call line to go ahead and exit, and we'll ask the clerk of the court to communicate with counsel for the next case to log on. All right. Thanks. Thank you very much. Thank you.